**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHILDREN'S HOSPITAL ASSOCIATION OF TEXAS; CHILDREN'S HEALTH CARE d/b/a CHILDREN'S HOSPITALS AND CLINICS OF MINNESOTA; GILLETTE CHILDREN'S SPECIALTY HEALTHCARE; CHILDREN'S HOSPITAL OF THE KING'S DAUGHTERS, INCORPORATED; SEATTLE CHILDREN'S HOSPITAL,<br>Plaintiffs,<br><br>v.<br><br>THOMAS PRICE, in his official capacity, Secretary, Department of Health and Human Services; SEEMA VERMA, in her official capacity, Administrator, Centers for Medicare and Medicaid Services; and the CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br>Defendants. | Case No. 17-cv-844 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Children's Hospital Association of Texas ("CHAT"), Children's Health Care d/b/a Children's Hospitals and Clinics of Minnesota ("Children's Minnesota"), Gillette Children's Specialty Healthcare ("Gillette Children's"); Children's Hospital of the King's Daughters, Incorporated ("CHKD"), and Seattle Children's Hospital ("Seattle Children's") (collectively, the plaintiff hospitals and the member hospitals of CHAT are referred to as "Plaintiffs") seek declaratory and injunctive relief against Defendants Thomas Price, Patrick Conway, and the Centers for Medicare and Medicaid Services ("CMS" or "Defendants") for

violations of the Medicaid Act and the Administrative Procedure Act ("APA"). In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

1. This action challenges a final rule titled "Medicaid Program: Disproportionate Share Hospital Payments – Treatment of Third Party Payers in Calculating Uncompensated Care Costs" promulgated by Defendant CMS pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (the "Medicaid Act") and made effective on June 2, 2017. 82 Fed. Reg. 16114, 16117 (April 3, 2017) (hereinafter the "Final Rule").

2. The Final Rule provides that third-party payments (private insurance and Medicare payments) must be included in the calculation of the hospital specific limit ("HSL"), which determines the maximum amount of supplemental Medicaid funds a Disproportionate Share Hospital ("DSH") may receive.

3. The Final Rule is contrary to Congress's intent under the Medicaid Act and is arbitrary and capricious.

4. On December 29, 2014, this Court preliminarily enjoined the "application, implementation and enforcement" of CMS guidance referred to as frequently-asked question No. 33 ("FAQ33") that also required that private insurance payments be included in the calculation of the DSH HSL in *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 241 (D.D.C. 2014).

5. A second federal court has vacated FAQ 33 in *N.H. Hosp. Ass'n v. Burwell*, No. 1:15-cv-00460, ECF No. 51 (D.N.H. 2017).[1]

---

[1] Five other federal lawsuits have been filed against Defendants challenging FAQ 33 because it requires that private insurance payments must be included in the calculation of the DSH HSL. *See New Hampshire Hospital Association, et al. v. Burwell et al.*, No. 15-cv-460 (D. N.H., filed Nov. 11, 2015); *Tennessee Hospital Association v. Burwell*, No. 3:16-cv-03263 (M.D. Tenn., filed Dec. 15, 2016); *Children's Health Care v. Burwell*, No. 0:16-cv-04064-WMW-DTS (D.

6. The Final Rule promulgates the identical policy that this Court enjoined and the District of New Hampshire vacated. Defendant CMS asserts that the Final Rule is a clarification of the existing regulations and policy and therefore it has retroactive effect.

7. Plaintiffs are 12 independent, not-for-profit DSH pediatric hospitals dedicated to the treatment and special needs of children and the advancement of pediatric medicine. As nationally recognized leaders in pediatric care, Plaintiffs treat children with critical illnesses and special needs from throughout the United States and the world. Plaintiffs treat these critically ill children regardless of whether their families have health insurance or their families have the ability to pay for their care.

8. All Plaintiffs treat disproportionately high numbers of Medicaid patients and are "deemed" DSH hospitals under the Medicaid Act entitled to receive DSH funds. Prior to FAQ 33 Plaintiffs received DSH supplemental funding.

9. The Final Rule will require that Plaintiffs collectively pay back hundreds of millions of dollars already received in supplemental DSH funds and will shut some, if not all, Plaintiffs completely out of the DSH program denying them future DSH funds they are entitled to receive.

10. The recoupment of past DSH funds and loss of future DSH funds is not the speculative loss of profit. Rather, it is the immediate and material loss of funds necessary for these non-profit hospitals to operate mission-driven programs that provide essential clinical and medical services to the very patients Congress sought to protect through the supplemental DSH program. This harm is imminent and irreparable.

---

Minn., filed Dec. 2, 2016); *Children's Hospital of the Kings Daughters, Inc. v. Price*, 2:17-cv-00139-RBS-LRL (E.D. Va., filed Mar. 7, 2017), *Missouri Hospital Association v. Price*, No. 2:17-cv-04052-BCW (W.D. Mo., filed Mar. 22, 2017).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 704-706 because this action presents a case and controversy under the Medicaid Act, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

12. Venue lies in this district under 28 U.S.C. § 1391 in that Defendants reside in the District of Columbia, a substantial part of the events giving rise to this claim occurred in the District of Columbia, and no real property is involved in the action. Venue also lies in this district under 5 U.S.C. § 703 because there is no special statutory procedure for appeal and this court is a court of competent jurisdiction.

## THE PARTIES

13. Plaintiff The Children's Hospital Association of Texas ("CHAT") is a non-profit association, whose members are the eight free-standing children's hospitals located throughout Texas.[2] CHAT's mission is to advance children's health and well-being by advocating for policies and funding that promote children's access to high-quality, comprehensive health care. CHAT's members have among the highest Medicaid utilization rates of all hospitals in the state of Texas. With a combined 2,943 licensed beds, 60 percent of all patient days were attributable to Medicaid patients in 2015. CHAT members provide care for children regardless of whether their families have health insurance or ability to pay for their care. All CHAT members are federally "deemed" DSH hospitals entitled to receive DSH funding under the Medicaid Act

[2] CHAT's members are: (1) Children's Health (Dallas, TX); (2) The Children's Hospital of San Antonio (San Antonio, TX); (3) Cook Children's Medical Center (Fort Worth, TX); (4) Covenant Children's Hospital (Lubbock, TX); (5) Dell Children's Medical Center of Central Texas (Austin, TX); (6) Driscoll Children's Hospital (Corpus Christi, TX); (7) El Paso Children's Hospital (El Paso, TX); and (8) Texas Children's Hospital (Houston, TX).

because they serve a disproportionate number of Medicaid and uninsured patients. Defendants' illegal actions deprive CHAT members of DSH funds, totaling millions of dollars each year that they are statutorily entitled to receive.

14. Plaintiff Children's Minnesota is a not-for-profit pediatric health system located in the Minneapolis-St. Paul metropolitan area that is dedicated to the treatment and special needs of children and the advancement of pediatric medicine. Children's Minnesota is the largest pediatric health system in the Upper Midwest. Children with critical illnesses and special needs are sent to Children's Minnesota for treatment from throughout the Upper Midwest region. Children's Minnesota treats these critically ill children regardless of whether their families have health insurance or their families have the ability to pay for their care. Children's Minnesota is federally "deemed" a DSH hospital entitled to receive DSH funding under the Medicaid Act because it serves a disproportionate number of Medicaid and uninsured patients. Defendants' illegal actions deprive Children's Minnesota of DSH funds, totaling millions of dollars each year, it is statutorily entitled to receive.

15. Plaintiff Gillette Children's is a not-for-profit pediatric hospital located in St. Paul, Minnesota dedicated to the treatment of and advancement of care for children with severe and complex musculoskeletal and neurological conditions resulting from genetic conditions, trauma, infection and other causes. Gillette Children's also serves patients with rare medical needs that require highly trained subspecialty providers not available in most health systems. Gillette Children's typically serves the highest proportion of patients covered by Medicaid in Minnesota. Gillette Children's provides care for children regardless of whether their families have health insurance or ability to pay for their care. Gillette Children's is federally "deemed" a DSH hospital entitled to receive DSH funding under the Medicaid Act because it serves a

disproportionate number of Medicaid and uninsured patients. Defendants' illegal actions deprive Gillette Children's of DSH funds, totaling millions of dollars each year, it is statutorily entitled to receive.

16. Plaintiff CHKD is an independent, not-for-profit, pediatric hospital, with its main campus located in Norfolk, Virginia. CHKD is Virginia's only freestanding, full-service children's hospital and it serves children throughout southeastern Virginia, the eastern shore of Virginia, northeastern North Carolina, as well as children from throughout the United States and the world, who come to CHKD for specialty care and for treatment of acute, life-threatening illnesses and injuries. CHKD treats these critically ill children regardless of whether their families have health insurance or their families have the ability to pay for their care. CHKD is federally "deemed" a DSH hospital entitled to receive DSH funding under the Medicaid Act because it serves a disproportionate number of Medicaid and uninsured patients. Defendants' illegal actions deprive CHKD of DSH funds, totaling millions of dollars each year, it is statutorily entitled to receive.

17. Plaintiff Seattle Children's is an independent, not-for-profit, pediatric hospital located in Seattle, Washington. It is the primary teaching, clinical, and research site for the Department of Pediatrics at the University of Washington School of Medicine. As the only freestanding children's hospital in the state of Washington, and because of Seattle Children's ability to provide advanced pediatric medical care, children from throughout Washington State, the Pacific Northwest, and all over the United States are sent to Seattle Children's for treatment. Seattle Children's treats these critically ill children regardless of whether their families have health insurance or their families have the ability to pay for their care. Defendants' illegal actions deprive Seattle Children's of DSH payments it is entitled to receive by reducing Seattle

Children's uncompensated costs to such an extent that Seattle Children's is unable to participate in the Washington State DSH program. Defendants' illegal actions deprive Seattle Children's of statutorily authorized DSH payments totaling millions of dollars each year.

18. Defendant Thomas Price is the United States Secretary of Health and Human Services. Defendant Price, by and through his designees at CMS, undertook the illegal and unauthorized actions challenged in this case and has withheld the administrative action plaintiffs have requested to be taken. Defendant Price is sued solely in his official capacity.

19. Defendant Seema Verma is the Administrator of CMS. CMS is the agency that administers the Medicaid program and the DSH program. Defendant Verma is sued solely in her official capacity.

20. Defendant CMS is the federal agency to which Defendant Price has delegated the authority pursuant to the Social Security Act, 42 U.S.C. §§ 1396a(13)(A)(iv), 1396r-4(a)(1)(B), to administer the Medicaid and DSH programs.

## STATUTORY AND REGULATORY FRAMEWORK

### A. The Medicaid Statute

21. The Medicaid program was established in 1965 as a cooperative venture between the federal and state governments to assist states in providing medical care to eligible individuals. 42 U.S.C. § 1396 *et seq.* It is designed to provide medical assistance to 1) persons whose income and resources are insufficient to meet the costs of necessary care and services; and 2) persons with special needs such as children with particular conditions regardless of financial need.

22. States are not obligated to participate in Medicaid, but must rigidly comply with federally imposed requirements if they opt to participate.

23. Each state administers its own Medicaid program pursuant to a state Medicaid plan which must be reviewed and approved by the Secretary of Health and Human Services ("State Plan"). 42 U.S.C. §§ 1396, 1396a. Upon approval of the State Plan, a state becomes eligible to receive federal matching funds, or "federal financial participation" for a percentage of the amounts expended, as medical assistance under a State Plan. 42 U.S.C. § 1396b(a)(1).

24. All Plaintiffs are located in states that participate in Medicaid and those states have approved State Plans.

25. Defendant CMS reviews Medicaid expenditures by the states to determine whether they are allowable under the Medicaid Act and the State Plan, and whether the appropriate federal matching payment has been claimed for such expenditures. If Defendant CMS finds that a state expenditure was not allowable under federal policy, it will disallow it and take action to recoup the federal dollars used for the disallowed expenditure. 42 U.S.C. § 1316(e).

**B. The DSH Program Under the Medicaid Act**

26. In 1981, Congress established the DSH Program under the Medicaid Act to require that all states participating in the federal Medicaid program provide supplemental Medicaid payments (DSH Payments) to hospitals that serve large numbers of Medicaid and other low-income patients with special needs. Pub. L. No. 97–35, § 2173(B)(ii), 95 Stat. 357 (codified at 42 U.S.C. § 1396a(13)(A)(iv)).

27. Congress established the DSH program to help relieve the financial burden on certain hospitals that treat a disproportionate share of Medicaid and uninsured patients. 42 U.S.C. § 1396r-4. Congress expressly referenced children's hospitals as examples of providers to whom DSH payments should be made based on "the proportion of low-income and Medicaid patients…served by such hospitals." 42 U.S.C. § 1396r-4 (a)(2)(D). This is because Medicaid

enrollment is available not only to low-income individuals, but also, regardless of family income, to all children born weighing less than 1200 grams, and to children with severe anomalies, heart ailments, cancer, and other long-term and severe illnesses, as well as those with special health care needs and disabilities, including children with significant musculoskeletal and neurological conditions.

28. Congress also provided that certain DSH hospitals would be "deemed" DSH hospitals if "the hospital's Medicaid inpatient utilization rate … is at least one standard deviation above the mean Medicaid inpatient utilization rate for hospitals receiving Medicaid payments in the State."[3] 42 U.S.C. § 1396r-4(b)(1)(A). "A "deemed" DSH hospital is "entitled to receive payment adjustments,…" H.R. Rep. No. 103-111, at 211-12 (1993), reprinted in 1993 U.S.C.C.A.N. 378, 538-39.

29. Plaintiffs are all "deemed" DSH hospitals that are entitled to receive DSH supplemental funding.

30. The formula for determining a hospital's maximum DSH payment is contained in the DSH statute. The HSL is the maximum DSH payment a qualifying DSH hospital may receive annually. The Medicaid Act prescribes that the HSL may not exceed the amount of that hospital's "uncompensated costs" of serving Medicaid and low-income patients. 42 U.S.C. § 1396r-4(g)(1)(A).

31. For purposes of the DSH Program, the Medicaid Act sets forth the precise formula for determining "uncompensated costs" as:

> [T]he costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are

[3] A hospital is also deemed to be a DSH hospital if it has a low-income utilization rate that exceeds 25 percent. 42 U.S.C. § 1396r-4(b).

> eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A).

32. Two categories of "uncompensated costs" are eligible for DSH supplemental payments under the Medicaid Act: (1) the costs of services to Medicaid patients (the Medicaid Shortfall component), and (2) the costs of services to uninsured patients (the uninsured component). Only the calculation of the Medicaid Shortfall component is at issue in this case.

33. 42 U.S.C. § 1396r-4 (g)(1)(A) does not reference private health insurance payments in the Medical Shortfall component of "uncompensated costs."

34. To ensure that the hospital-specific DSH payment limit has been calculated correctly for each DSH hospital, each state must provide an annual report and audit of its DSH program to Defendant CMS. 42 U.S.C. § 1396r-4(j). This annual report must include:

> A. An identification of each disproportionate share hospital that received a payment adjustment under this section for the preceding fiscal year and the amount of the payment adjustment made to such hospital for the preceding fiscal year.
>
> B. Such other information as the Secretary determines necessary to ensure the appropriateness of the payment adjustments made under this section for the preceding fiscal year.

**C. The CMS Regulations**

35. On December 19, 2008, Defendant CMS finalized a rule, effective January 19, 2009, titled "Medicaid Program; Disproportionate Share Hospital Payments." 73 Fed. Reg. 77,904 (Dec. 19, 2008) ("2008 Rule"). The rule "sets forth the data elements necessary" to comply with the Medicaid Act requirements for auditing and reporting DSH payments. *Id.*

36. The 2008 Rule defines "uncompensated care costs" consistent with the Medicaid Act:

> [T]he total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals . . . *less the sum of regular Medicaid*

> *FFS rate payments, Medicaid managed care organization payments, [and] supplemental/enhanced Medicaid payments*[.]

42 C.F.R. § 447.299(c)(16) (emphasis added).

37. 42 C.F.R. § 447.299(c)(16) does not reference private insurance or any third party payments in determining "uncompensated costs."

38. To verify the accuracy of these state annual reports, states must employ an independent auditor to audit the state's compliance with the federal DSH program. 42 U.S.C. § 1396r-4(j).

39. These independent audits must verify, *inter alia*, that DSH payments made to each hospital comply with the applicable hospital-specific DSH payment limit. 42 U.S.C. § 1396r-4(j)(2).

40. Audits are conducted three years after the DSH year under review. Thus, DSH payments received in 2014 are being audited in 2017. The states must complete the audits by September 30 and submit them to CMS no later than December 31. Any overpayments that the audit reveals "must be recouped by the state within one year of their discovery or the federal government may reduce its future contribution." *Texas Children's Hosp.*, 76 F. Supp. 3d at 230 (citing 42 U.S.C. § 1396b(d)(2)(C), (D)).

41. Both this Court and the New Hampshire district court ruled that the 2008 Rule is not the source of the policy of allowing private insurance payments to be subtracted in determining the Medicaid shortfall in the HSL calculation. *Texas Children's Hosp.*, 76 F. Supp. 3d. at 237; *N.H. Hosp. Ass'n* 2017 WL 822094, at * 11.

## THE FINAL RULE

42. On August 15, 2016, Defendants published a notice of proposed rulemaking requiring that "[a]ll third party payments (including, but not limited to … private insurance) must

be included in the calculation of uncompensated care costs for purposes of determining the hospital specific DSH limit." 81 Fed. Reg. 53,980, 983 (August 15, 2016). CMS posted 55 individual comments on the proposed rule. All but six of the 55 criticized the proposal on multiple grounds, including that (1) the Medicaid Act did not give CMS the authority to include third-party payments in the calculation of the HSL, (2) the proposal would deprive DSH hospitals of funds Congress intended them to receive, and (3) the proposed rule, if promulgated, cannot have retroactive effect.

43. Plaintiffs Children's Minnesota, Gillette, and two members of CHAT (Texas Children's Hospital and Cook Children's Hospital) participated in the rulemaking process by submitting comments to the proposed Final Rule.

44. On April 3, 2017, the Defendants published the Final Rule, which amends 42 C.F.R. §447.299(c)(10), to "modify the terms of the current regulation to make explicit that 'costs' for purposes of calculating the hospital-specific limits are costs net of third-party payments." 82 Fed. Reg. 16114, 16117 (April 3, 2017).

45. The regulation governing how costs must be considered in the calculation of the DSH HSL therefore now provides:

> (10) Total Cost of Care for Medicaid IP/OP Services. The total annual costs incurred by each hospital for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals. The total annual costs are determined on a hospital-specific basis, not a service-specific basis. For purposes of this section, costs-
>
> (i) Are defined as costs net of third-party payments, including, but not limited to, payments by Medicare and private insurance.
>
> (ii) Must capture the total burden on the hospital of treating Medicaid eligible patients prior to payment by Medicaid. Thus, costs must be determined in the aggregate and not by estimating the cost of individual patients. For example, if a hospital treats two Medicaid eligible patients at a cost of $2,000 and receives a $500

> payment from a third party for each individual, the total cost to the hospital for purposes of this section is $1,000, regardless of whether the third party payment received for one patient exceeds the cost of providing the service to that individual.

82 Fed. Reg. at 16,122 (Apr. 3, 2017).

46. The final rule becomes effective on June 2, 2017 and will be enforced by Defendants on a nationwide basis.

47. The policy contained in the Final Rule—of including private insurance payments in the HSL calculation—is not embodied in the 2008 Rule. The Final Rule is thus a substantive new rule that cannot have retroactive effect.

**THE FINAL RULE IMMINENTLY AND IRREPARABLELY HARMS PLAINTIFFS**

48. Plaintiffs sustain substantial losses from treating pediatric Medicaid patients.

49. Plaintiffs rely heavily on the DSH program to offset financial losses they suffer in treating a disproportionately high number of Medicaid patients.

50. In 2014, Plaintiffs collectively received over $75 million in DSH funding. Under the Final Rule, the entire sum is considered an "overpayment."

51. The 2014 DSH audits are currently underway. Once the 2014 DSH audits are complete, the respective state auditors will submit the audit results to CMS. Once an overpayment is identified, CMS regulations direct the states to recoup the overpayment. States are authorized to recoup overpayments as soon as the states submit the DSH audits to CMS, which could occur anytime between October 1 and December 31, 2017, and even sooner if states complete the audit before September 30, 2017 and submits it to CMS. Plaintiffs therefore face the certain and imminent threat of having millions of dollars recouped before this case can be decided on the merits.

52. Once the DSH funds are recouped, state Medicaid agencies redistribute the funds to other hospitals in the state that qualify for the DSH program. Plaintiffs have no administrative or legal recourse to recover the funds, even if they fully prevail on the merits of this lawsuit. Defendants and the states enjoy sovereign immunity and therefore Plaintiffs are unable to recover the lost DSH funds through an action for damages.

53. The Final Rule precludes some, if not all, Plaintiffs from receiving any future DSH funds. For example, the Final Rule will deny Seattle Children's approximately $6 million in DSH funds for the 2018 DSH program year which runs from July 1, 2017 to June 30, 2018 and will disqualify the hospital from ever receiving DSH funds in the future. Texas Children's will not receive approximately $45 million in 2018 DSH funds.

54. Because other supplemental Medicaid programs use the DSH HSL to calculate the amount of other funds Plaintiffs may receive, the Final Rule significantly decreases, and in some cases precludes altogether, Plaintiffs from receiving these funds.

55. The Final Rule not only deprives Plaintiffs of the DSH funds, it lays claim to *all* third-party payments Plaintiffs receive on behalf of Medicaid-eligible patients even though the third-party payments exceed Medicaid allowable costs and pay for services Medicaid does not cover. The Final Rule forces Plaintiffs to shift revenues earned from outside of the Medicaid program to further offset the significant losses Plaintiffs incur treating Medicaid patients. By forcing Plaintiffs to unreasonably shoulder the burden of treating Medicaid patients, the Final Rule eliminates funding for vital services and programs Plaintiffs provide and compromises Plaintiffs' ability to financially sustain their operations.

56. Plaintiffs have various capital expenditures planned for 2017 and following years, such as needed improvements in technology, expansion of operating rooms, opening facilitates to

provide better access to health are in different segments of the community, the purchase of vital pharmacy software and replacing aged ultrasound equipment, and more. The Final Rule harms Plaintiffs by forcing them to curtail or stop altogether these planned and necessary improvements.

## COUNT I

### Violation of 5 U.S.C. § 706(2)(C): Defendants Acted in Excess of Statutory Jurisdiction, Authority, or Short of Statutory Right in Promulgating the Final Rule

57. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 56.

58. The Final Rule is "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

59. The Final Rule is in excess of Defendant's CMS statutory jurisdiction and authority because it is contrary to Congress's unambiguous intent in enacting the Medicaid Act that only Medicaid payments be subtracted in determining the Medicaid Shortfall of the HSL 42 U.S.C. § 1396r-4(g)(1)(A). The subtraction of private insurance payments in determining the Medicaid Shortfall of the HSL has not been authorized by Congress.

60. Alternatively, the requirement of the Final Rule that private insurance payments be subtracted in determining the Medicaid Shortfall of the HSL is not a reasonable interpretation of the Medicaid Act. The Final Rule (1) contravenes Congress's mandate that "deemed" DSH hospitals, such as Plaintiffs', are entitled to receive supplemental DSH funding; and 2) is predicated on Defendant CMS's erroneous, unreasonable, and illegal interpretation that Defendant CMS has the discretion to determine "cost incurred" means private insurance payments.

61. The Final Rule is a violation of Section 706(2)(C) of the APA that requires a reviewing court to "hold unlawful and set aside" agency action "in excess of statutory jurisdiction, authority, . . . or short of statutory right." 5 U.S.C. § 706(2)(C).

62. The Final Rule is unlawful and should be set aside under 5 U.S.C. § 706(2)(C).

## COUNT II

### Violation of 5 U.S.C. § 706(2)(A): The Final Rule is Arbitrary, Capricious, or Otherwise Not in Accordance with Law

63. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 62.

64. The Final Rule constitutes "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

65. Section 706(2)(A) of the APA proscribes agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

66. In promulgating the Final Rule, CMS was required to articulate a satisfactory explanation and make a rational connection between the policy it set in the Final Rule and the record facts. CMS's offered explanation for its decision is counter to the record evidence, which demonstrates that the Final Rule denies DSH funding to hospitals that are "deemed" DSH hospitals and entitled to receive DSH funding.

67. CMS states that the Final Rule is necessary to "ensure[] that the DSH payment reflects the real economic burden of hospitals that treat a disproportionate share of low-income patients," 82 Fed. Reg. at 16117. The record evidence shows that the Final Rule increases the economic burden on DSH hospitals like Plaintiffs by forcing them to shift revenues earned from

outside of the Medicaid program to further offset the significant losses they incur treating Medicaid patients.

68. CMS's justification for applying third-party payments in the calculation of the HSL under the Final Rule is that these payments reimburse hospitals for *services covered by the Medicaid program*. 82 Fed. Reg. at 16116. Private insurance pays for many services not covered by Medicaid.

69. The Final Rule is arbitrary, capricious, an abuse of discretion, and not in accordance with law. The Final Rule should therefore be vacated pursuant to 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor, and

a. Declare that the Final Rule is in excess of Defendants' statutory authority, or is short of statutory right and therefore is a violation of the APA;

b. Declare that the Final Rule is arbitrary, capricious and otherwise not in accordance with law and therefore violates the APA;

c. Preliminarily enjoin—on a nationwide basis—the Defendants from enacting, enforcing, applying, or implementing (or requiring any state to enforce, apply, or implement) the Final Rule pending a decision on the merits;

d. Order Defendants to notify the state Medicaid programs in every state that, pending further order by the Court, the enforcement of the Final Rule is enjoined and that Defendants will take no action to recoup any federal DSH funds based on the state's noncompliance with the Final Rule;

e. Vacate the Final Rule; and

f. Grant Plaintiffs such other relief as may be necessary and appropriate or as the Court deems just and proper.

Dated: May 8, 2017

Respectfully submitted,

/s/ Geraldine E. Edens
Geraldine E. Edens (D.C. Bar No. 437056)
Christopher H. Marraro (D.C. Bar No. 395152)

**Baker & Hostetler LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
gedens@bakerlaw.com
cmarraro@bakerlaw.com

*Attorneys for Plaintiffs Children's Hospital Association of Texas, Children's Health Care d/b/a Children's Hospitals and Clinics of Minnesota, Gillette Children's Specialty Healthcare, Children's Hospital of the King's Daughters, Incorporated, and Seattle Children's Hospital*