IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHILDREN'S HOSPITAL ASSOCIATION OF TEXAS; CHILDREN'S HEALTH CARE d/b/a CHILDREN'S HOSPITAL AND CLINICS OF MINNESOTA; GILLETTE CHILDREN'S SPECIALTY HEALTHCARE; CHILDREN'S HOSPITAL OF THE KING'S DAUGHTERS, INCORPORATED; SEATTLE CHILDREN'S HOSPITAL,<br><br>      Plaintiffs,<br><br>   v.<br><br>THOMAS E. PRICE, in his official capacity, Secretary, Department of Health and Human Services; SEEMA VERMA, in her official capacity, Administrator, Centers for Medicare and Medicaid Services; and the CENTERS FOR MEDICARE AND MEDICAID SERVICES<br><br>      Defendants. | Civil Action No.: 1:17-cv-00844-EGS |

**DECLARATION OF STEPHEN KIMMEL**

I, Stephen Kimmel, declare as follows:

1. I am the Chief Financial Officer ("CFO") for Cook Children's Healthcare System, which includes Cook Children's Medical Center ("Cook Children's"). I have held this position at Cook Children's since 2014. I have 27 years of executive level finance experience in the healthcare industry, with all of those years spent in hospital financial leadership positions. As the CFO of Cook Children's, I oversee and am responsible for the accounting, financial planning and analysis, revenue cycle management, payor contracting, treasury operations, investments, supply chain, and governmental reimbursement programs including, Medicaid, Medicare, and supplemental governmental payment programs including the Disproportionate Share Hospital

("DSH") program. I have a good working knowledge of Medicaid and Medicare cost reporting and Medicaid and Medicare DSH funding. I am over the age of 21 and am of sound mind. I have personal knowledge of the facts set forth herein and, if called upon to testify, I could and would competently testify thereto.

**Cook Children's**

2. Cook Children's is a non-profit 369-bed freestanding children's hospital located in Fort Worth, Texas and serves as a significant pediatric provider in the North Texas, Dallas/Ft. Worth area, attracting pediatric patients in need of specialized pediatric services from all over the state, the region and the nation. Since opening almost 100 years ago with 30 beds, Cook Children's has grown into one of the most recognized freestanding children's health care systems in the southwest with over 1 million patient encounters each year. In addition to the children's hospital, Cook Children's Healthcare System invests in a large pediatric physician network, a pediatric focused home health company, and a provider-sponsored Medicaid Health Plan that contracts exclusively with the state Medicaid program to serve children in Medicaid and the Children's Health Insurance Program ("CHIP") with more than 134,000 covered lives. We are the only major provider of pediatric services in our 6-county primary service area comprised of 700,000 children ages 0-14 years. We have more than 60 pediatric primary, specialty, and urgent care locations throughout our primary service area and North Texas.

3. In 2014, Cook Children's had approximately 169,000 Medicaid-eligible patient encounters, the majority of which come from low-income families. Approximately 67% of the patient days at Cook Children's are attributable to Medicaid-eligible patients. Of those, approximately 95% of Medicaid days at Cook Children's are for children whose claims are actually submitted to the Medicaid program for payment. The remaining 5% of these patient

days are for Medicaid-eligible patients with private insurance for whom the hospital receives no payment from the Medicaid program.

**The Final Rule**

4. It is my understanding that The Centers for Medicare and Medicaid Services ("CMS") has issued a new rule, effective June 2, 2017, entitled "Medicaid Program; Disproportionate Share Hospital Payments-Treatment of Third Party Payers in Calculating Uncompensated Care Costs," that changes the manner in which Medicaid DSH supplemental payment calculation treats third-party payers in calculating uncompensated care costs (the "Final Rule"). Prior to the Final Rule's publication on April 3, 2017, I submitted comments to CMS on behalf of Cook Children's, protesting the rule. (Ex. A, 9/13/16 S. Kimmel letter to A. Slavitt.)

5. As explained in the comments, Medicaid only reimburses Cook Children's approximately 76% of its annual incurred costs in treating Medicaid patients. (Ex. A.) As a result, Cook Children's sustains significant losses treating large numbers of Medicaid patients. As the comments pointed out to CMS, its rationale that the policy embodied in the Rule reflects the "real economic burden" of hospitals that treat disproportionate numbers of Medicaid patients does not take into account the realty that hospitals like Cook Children's invest in technologies, programs, and services that are central to their non-profit mission of serving as centers of excellence for children.

6. I also pointed out that CMS' assertion that prior to the 2008 rule, the HSL led to the "artificial inflation of uncompensated care costs" was patently wrong in the context of a children's hospital. Medicaid does not pay the hospital for any costs associated with a patient who is also covered by a third-party payer, and in fact, very few children fall within this category. However, the few that do is enough to artificially decrease Cook Children's HSL

thereby denying Cook Children's DSH funds. My comments, and those of other children's hospitals expressing similar concerns, were disregarded in the Final Rule.

**Current Status of DSH Audits**

7. Similar to every other hospital in Texas, Cook Children's submits to the Texas Health and Human Services Commission ("HHSC") claims data that includes all Medicaid claims data, i.e., charges and payments, including data for patients who were Medicaid-eligible but for whom no Medicaid payment was expected or paid (referred to herein as Medicaid Eligible Only). The Medicaid Eligible Only information is submitted and included for purposes of assuring compliance with the Medicaid secondary payer rule, which assures that Medicaid does not pay a claim for which a third-party payer is responsible. From this data, HHSC maintains a Medicaid program data set.

8. Based on the results of the DSH audits for 2011-2013[1], which have been completed and submitted to CMS, Cook Children's had identified overpayments totaling $26,081,546. HHSC has not recouped the $26,081,546 because of the preliminary injunction issued in the *Texas Children's Hospital* case. Nevertheless, CMS maintains that the Final Rule is retroactive suggesting that even if the plaintiffs prevail in that case, the $26,081,546 million could eventually be recouped. Once these funds are recouped, the Texas state plan directs HHSC to redistribute these funds to other qualifying hospitals in the state and Cook Children's has no administrative or legal way to get the funds back.

9. Currently, the 2014 DSH payments are under audit, including $17.1 million paid to Cook Children's. Cook Children's received the request for 2014 DSH survey data from Myers and Stauffer on April 25, 2017 and must return the completed survey by May 26, 2017.

---

[1] Texas has engaged the independent audit firm of Myers & Stauffer to audit the DSH program. Thus, all data for the DSH program is submitted to Myers & Stauffer.

Pursuant to the Final Rule, Myers and Stauffer will include commercial third-party payments in the DSH calculation, thereby eliminating Cook Children's Medicaid shortfall and identifying the entire $17.1 million as an "overpayment", subject to recoupment. Although Cook Children's sustained significant losses associated with its treatment of the Medicaid population in 2014, it will now be forced to refund the state $17.1 in 2014 DSH payments. The one year clock begins when the states submit the audits to CMS, which could occur anytime between October 1 and December 31, and even sooner if a state completes the audit before September 30 and submits it to CMS.

**Imminent and Irreparable Harm**

10. Recoupment of $17.1 million of 2014 DSH payments will restrict Cook Children's ability to make substantial investments in programs such as Texas' Medicaid Star Kids managed care, neighborhood clinics, asthma programs, mental health/behavioral health initiatives and other community efforts established to better care for complex patients. The hospital will be forced to erode the continued investment in such under-reimbursed programs and services, from which Medicaid patients have always benefited. The impact of losing DSH funding received in 2014 ($17.1 million) is the equivalent of 115 kidney transplants; or 775 inpatient behavioral health interventions; or 17,652 emergency room visits; or 97,844 urgent care visits. In short, the loss of DSH funding has significant programmatic implications.

11. Children's hospitals are regional and national providers of care that house experts drawn to the institution because of the intellectual, academic, research and other resources made available to ensure that they can provide life-saving treatment to the very patients that are the cause of this issue: children who are uniquely sick and who have very serious illnesses. It is because all hospitals are not equal that the DSH program Medicaid shortfall component was

created, *e.g.* to recognize that hospitals like Cook Children's run towards Medicaid program patients and focus directly on their care. The Final Rule undermines this policy and the intention of Congress in this regard.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 15th day of May, 2017 in Fort Worth, Texas.

_____
Stephen Kimmel