**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| CHILDREN'S HOSPITAL ASSOCIATION OF TEXAS; CHILDREN'S HEALTH CARE d/b/a CHILDREN'S HOSPITAL AND CLINICS OF MINNESOTA; GILLETTE CHILDREN'S SPECIALTY HEALTHCARE; CHILDREN'S HOSPITAL OF THE KING'S DAUGHTERS, INCORPORATED; SEATTLE CHILDREN'S HOSPITAL, |
| Plaintiffs, |
| v. |
| ALEX MICHAEL AZAR, II, in his official capacity, Secretary, Department of Health and Human Services; SEEMA VERMA, in her official capacity, Administrator, Centers for Medicare and Medicaid Services; and the CENTERS FOR MEDICARE AND MEDICAID SERVICES, |
| Defendants. |

Civil Action No. 17-844 (EGS)

**MEMORANDUM OPINION**

Under the Medicaid Act ("Act"), the federal government provides each state funds for distribution to hospitals that treat significantly higher percentages of Medicaid-eligible patients to help cover the costs of providing medical care to such individuals. However, these supplemental payments are subject to limits to ensure that no hospital receives payments that would result in a profit, rather than covering only

Medicaid-related costs. On May 8, 2017, Plaintiffs—one children's hospital association, whose members are eight free-standing children's hospitals in the state of Texas, and four other free-standing children's hospitals located in Minnesota, Virginia, and Washington—filed suit in this Court challenging a final rule that defines how "costs" are to be calculated for purposes of determining the limit on the amount of the supplemental payment a hospital serving a disproportionate share of Medicaid-eligible individuals is entitled to receive. *See* Medicaid Program; Disproportionate Share Hospital Payments – Treatment of Third Party Payers in Calculating Uncompensated Care Costs, 82 Fed. Reg. 16,114, 16,117 (Apr. 3, 2017) ("Final Rule"). The Final Rule permits Defendants—the Secretary of Health and Human Services ("the Secretary"), Centers for Medicare and Medicaid Services ("CMS"), and the CMS Administrator—to define "costs" as those "costs net of third-party payments, including, but not limited to, payments by Medicare and private insurance." 42 C.F.R. § 447.299(c)(10)(i).

On March 6, 2018, this Court granted Plaintiffs' motion for summary judgment and vacated the Final Rule, holding that the Final Rule's definition of "costs" was inconsistent with the

Act. Mem. Op., ECF No. 34 at 30, 44-45.[1] Defendants timely appealed, and the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") reversed this Court's ruling, finding that the Final Rule was "consistent with the statute's context and purpose" and that it was not arbitrary or capricious. *Children's Hosp. Ass'n of Tex. v. Azar*, 933 F.3d 764, 772, 774 (D.C. Cir. 2019). The Court reinstated the Final Rule and remanded the case for further proceedings consistent with the opinion. *Id*. at 774.

Pending before the Court is Plaintiffs' motion to clarify the effective date of the Final Rule, in view of the D.C. Circuit's reinstatement of the Final Rule. *See* Pls.' Mot. Mem. Clarify Effective Date Final Rule ("Pls.' Mot."), ECF No. 44. Plaintiffs argue that the effective date of the Final Rule should be no earlier than the date the D.C. Circuit's mandate issued on November 19, 2019. *Id* at 5. Defendants, on the other hand, ask the Court to find that the Final Rule is effective as of its initial effective date of June 2, 2017. Defs.' Opp'n Pls.' Mot. Clarify Effective Date Final Rule ("Defs.' Opp'n"), ECF No. 46 at 7-8.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Upon consideration of the parties' submissions, the applicable law, and the entire record herein, Plaintiffs' motion is **DENIED**.

## I. Background

Medicaid is a "joint state-federal program in which healthcare providers serve poor or disabled patients and submit claims for government reimbursement." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996-97 (2016). In addition to serving low-income individuals, Medicaid also provides benefits to children with certain serious illnesses, without regard to family income. *See, e.g.*, 42 U.S.C. § 1396a(a)(10)(A)(i)(II) (children are eligible for Medicaid if they are eligible for Supplemental Security Income ("SSI")); 20 C.F.R. § 416.934(j) (children born weighing less than 1,200 grams are presumptively eligible for SSI). Individual states, subject to the federal government's review and approval, administer their own program. *See* 42 U.S.C. § 1396-1. Once the Secretary or the Secretary's designee approves a state plan, the state receives federal financial participation to cover part of the costs of its Medicaid program. *Id.* § 1396b(a)(1). If a state fails to comply with the statutory or regulatory requirements governing Medicaid, the federal government may recoup federal funds from the state. *See id.* § 1316(a), (c)-(e).

The cost of treating Medicaid patients is high. To help ease the financial strain, Congress authorized supplemental payments ("DSH payments") to hospitals that serve a disproportionate share of low-income patients ("DSH hospitals"). *See* 42 U.S.C. § 1396a(a)(13)(A)(iv). In 1993, to assuage concerns that some hospitals were receiving DSH payments in excess of "the net costs, and in some instances the total costs, of operating the facilities," Congress amended the Medicaid program to cap DSH payments at each hospital's costs incurred. H.R. Rep. No. 103-111, at 211 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 278, 538. For Medicaid patients, the Act sets the hospital-specific limit ("HSL") for DSH payments as "the costs incurred during the year of furnishing hospital services" to Medicaid-eligible individuals "as determined by the Secretary and net of payments" under the Act (referred to as the "Medicaid shortfall"). 42 U.S.C. § 1396r-4(g)(1)(A).

To ensure that DSH payments comply with statutory requirements, the Medicaid Act was again amended in 2003 to require that each state provide an annual report and an audit of its DSH program. *See id.* § 1396r-4(j). The reports must identify which hospitals receive DSH payments and the audits must verify that the DSH payments comply with the statutory requirements. *Id.* In 2008, CMS issued a final rule pursuant to notice-and-comment rulemaking implementing the 2003 auditing requirements.

*See* Medicaid Program; Disproportionate Share Hospital Payments, 73 Fed. Reg. 77,904 (Dec. 19, 2008) ("2008 Rule"). The 2008 Rule provided that each state must report to CMS the cost of each DSH hospital's "Total Medicaid Uncompensated Care," but did not state whether third-party payments, including payments by Medicare and private insurers, were meant to be included in calculating the amount. *Id.* at 77,950 (codified at 42 C.F.R. § 447.299(c)(11)).

On January 10, 2010, CMS posted answers to FAQs regarding the audit and reporting requirements, clarifying that payments made by Medicare and private insurers should be included. *See* Mem. Op., ECF No. 34 at 11. The FAQs were subsequently challenged in multiple courts as an unlawful amendment of the 2008 Rule and as inconsistent with the Medicaid Act, and each of the courts to consider the issue found the FAQs invalid on procedural grounds for failing to properly promulgate the policy embodied in the FAQs in accordance with notice-and-comment requirements. *See id.* at 11-13 (collecting cases).

On August 15, 2016, CMS issued a notice of proposed rulemaking and subsequently promulgated the Final Rule. 81 Fed. Reg. 53980, 53981 (Aug. 15, 2016). The Final Rule establishes that payments by Medicare and private insurers are to be included in calculating a hospital's "costs incurred." 82 Fed. Reg. 16,114, 16,122 (Apr. 3, 2017) (codified at 42 C.F.R. §

447.299(c)(10)). It provides, among other things, that "costs .
. . [a]re defined as costs net of third-party payments,
including, but not limited to, payments by Medicare and private
insurance." *Id.* The Final Rule went into effect on June 2, 2017.
*Id.* at 16,115. Defendants noted that, because the Final Rule
merely "provid[es] clarification to existing policy," there is
"no issue of retroactivity, nor a need for a transition period."
*Id.* at 16,118.

Plaintiffs filed suit on May 8, 2017, arguing that the
Final Rule violates the Administrative Procedure Act because it
exceeds the Secretary's authority under the Medicaid Act and is
arbitrary and capricious. Compl., ECF No. 1. On May 15, 2017,
Plaintiffs filed a motion for a preliminary injunction
requesting the Court to "enjoin[] Defendants – on a nationwide
basis – from enforcing, applying, or implementing (or requiring
any state to enforce, apply, or implement)" the Final Rule. Mot.
Prelim. Inj., ECF No. 8 at 1. On May 23, 2017, in accordance
with the Court's May 19, 2017 Order, the parties filed a joint
status report in which they agreed that Plaintiffs' motion for a
preliminary injunction could "be combined with the merits and
treated also as a motion for summary judgment." Joint Status
Report, ECF No. 11 at 2. The Court entered an order
consolidating Plaintiffs' motion for a preliminary injunction
with a determination of the merits under Federal Rule of Civil

Procedure 65(a)(2) on May 24, 2017. Plaintiffs filed a combined application for a preliminary injunction and summary judgment on June 5, 2017. Pls.' Combined Mem. Supp. Appl. Prelim. Inj. Summ. J. ("Pls.' Mem."), ECF No. 12-1.

On March 6, 2018, this Court vacated the Final Rule and entered summary judgment for Plaintiffs, holding that the Rule "is inconsistent with the plain language of the Medicaid Act," which "clearly indicates which payments can be subtracted from the total costs incurred during the year by hospitals" and "nowhere mentions subtracting other third-party payments made on behalf of Medicaid-eligible patients from the total costs incurred." Mem. Op., ECF No. 34 at 30, 34. Defendants timely appealed. Notice Appeal, ECF No. 37.

While the appeal was pending, Defendants indicated on the CMS website that "[i]n light of the decision in *Children's Hosp. Ass'n of Texas v. Azar*, No. 17-cv-844 (D.D.C. March 2, 2018), *appeal docketed*, No. 18-5135 (D.C. Cir. May 9, 2018), CMS will not be enforcing the 2017 rule (published at 82 Fed. Reg. 16114 and codified at 42 U.S.C. § 447.299(c)(10)), as long as the *Children's Hospital Ass'n of Texas* decision remains operative in its current form. The government's appeal of that decision is pending at this time." *See* Ex. A to Kenneally Decl., ECF No. 44-3 at 5. States also continued to make DSH supplemental payments

to Plaintiffs using a formula that did not take into account the
Final Rule. Pls.' Mot., ECF No. 44 at 8-9.

On August 13, 2019, the D.C. Circuit "reverse[d] the
judgment of [this Court], reinstate[d] the 2017 Rule and
remand[ed] the case for further proceedings consistent with
[its] opinion." *Children's Hosp. Ass'n of Tex.*, 933 F.3d at 774.
The D.C. Circuit held that the Final Rule is "consistent with
the statute's context and purpose, both of which suggest DSH
payments are meant to assist those hospitals that need them most
by covering only those costs for which DSH hospitals are in fact
uncompensated." *Id.* at 772. The court further held that the
Final Rule was not the product of arbitrary and capricious
reasoning because CMS had adequately explained the reasons for
the departure from the 2008 Rule and the Secretary had tied the
Final Rule to the record. *Id.* at 773-74. The mandate issued on
November 19, 2019. Mandate, ECF No. 40.

On November 20, 2019, Plaintiffs moved to set a status
conference date or, in the alternative, a briefing schedule
concerning any outstanding questions following the D.C.
Circuit's decision. Pls.' Mot. Mem. Set Status Conf., ECF No.
39. Defendants opposed the motion. Mem. Opp'n, ECF No. 41. On
November 29, 2019, the Court denied Plaintiffs' motion for a
hearing, but granted the motion for a briefing schedule to
resolve any remaining issues. Min. Order (Dec. 3, 2019).

On or around January 10, 2020, CMS updated its website to indicate that it intended to enforce the Final Rule. Pls.' Mot., ECF No. 44 at 9; Defs.' Opp'n, ECF No. 46 at 9. The website stated that "[i]n the absence of an operative judicial ruling vacating or enjoining the 2017 rule, the 2017 rule applies with respect to all hospital services furnished on or after June 2, 2017, and CMS intends to enforce it accordingly." Ex. B to Kenneally Decl., ECF No. 44-3 at 12 (excluding the state of Mississippi from enforcement due to the litigation pending in the United States Court of Appeals for the Fifth Circuit at that time).

On January 13, 2020, Plaintiffs filed the pending motion.

## III. Analysis

In view of the D.C. Circuit's reversal of this Court's decision vacating the Final Rule, the parties ask the Court to clarify the effective date of the Final Rule. Plaintiffs contend that the Court should find that the Final Rule's effective date is no earlier than the issuance of the D.C. Circuit's mandate on November 19, 2019. Pls.' Mot., ECF No. 44 at 12. Defendants, on the other hand, contend that the reinstated Final Rule should be effective as of the originally scheduled effective date of June 2, 2017. Defs.' Opp'n, ECF No. 46 at 7-8. The Court agrees with Defendants and holds that the effective date of the Final Rule is June 2, 2017.

## A. The Retroactivity Rule From *Harper* Applies

The Court finds that the retroactivity principles articulated in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), compels the conclusion that the D.C. Circuit's reinstatement of the Final Rule should apply with full retroactive effect. Under the Supreme Court's decision in *Harper*, judicial decisions, as opposed to statutes and regulations, presumptively apply retroactively. 509 U.S. at 97. Accordingly, when the Supreme Court or federal court of appeals for the circuit in question applies "a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Id.* at 95, 97 ("'[T]he nature of judicial review' strips us of the quintessentially 'legislat[ive]' prerogative to make rules of law retroactive or prospective as we see fit." (second alteration in original) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987))); *see also James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535-36 (1991). "[T]he decision of a federal court must be given retroactive effect regardless whether it is being applied by a court or an agency." *Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995). If a court of appeals

overrules a district court, then that district court decision is rendered a "legal nullity" and "requires that it be treated thereafter as though it never existed." *Khadr v. United States*, 529 F.3d 1112, 1115-16 (D.C. Cir. 2008) (quoting *Butler v. Eaton*, 141 U.S. 240, 244 (1891)). Thus, "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145 (1919).

Plaintiffs concede that it is a "well-settled principle that judicial decisions announce the law retroactively." Pls.' Reply, ECF No. 48 at 9. However, Plaintiffs argue that *Harper* is inapplicable to the present situation for several reasons. First, Plaintiffs argue that, because the Court's vacatur rendered the Final Rule void and Defendants did not seek a stay pending appeal, the Final Rule may not be enforced any earlier than the date of the D.C. Circuit's mandate. Pls.' Mot., ECF No. 44 at 12-14. Citing to *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), Plaintiffs contend that to hold otherwise would constitute impermissible retroactive rulemaking. *Id.* But in so arguing, Plaintiffs appear to conflate the retroactivity principles of judicial decisions with the retroactivity principles of regulations and statutes. In *Bowen*, the Supreme Court explained that because statutes and regulations change the

law, they are presumptively not applied retroactively. *See* 488
U.S. at 208-09 (holding that HHS lacked statutory authority to
promulgate a rule requiring private hospitals to refund Medicare
payments for services rendered before promulgation of the rule).
*Bowen* did not address the situation here, where the dispute
instead centers on the retroactive effect and operation of a
judicial decision.

Indeed, the majority of federal courts faced with
circumstances closely mirroring the procedural posture in this
case have applied *Harper*'s retroactivity principles and have
concluded that an agency rule that is vacated but ultimately
reinstated on appeal has an effective date as of the agency's
initially scheduled date. *See, e.g.*, *U.S. W. Commc'ns., Inc. v.
Jennings*, 304 F.3d 950, 957 (9th Cir. 2002) (following *Harper*
and holding that, with respect to previously vacated rules, the
Supreme Court's reinstatement of the rules meant that the court
"should apply those rules to all interconnection agreements
arbitrated under the Act, including agreements arbitrated before
the rules were reinstated"); *GTE S., Inc. v. Morrison*, 199 F.3d
733, 740 (4th Cir. 1999) ("[T]he Supreme Court's determination
that the FCC has jurisdiction to issue pricing rules would
appear to compel the conclusion that the FCC always had such
jurisdiction and that the rules apply as of the effective date
originally scheduled." (citation omitted)); *Tagaeva v. BNV Home*

*Care Agency, Inc.*, No. 16-cv-6869 (RRM) (RLM), 2018 WL 1320661,
at *3 (E.D.N.Y. Mar. 13, 2018) (noting that the argument that a
judicial decision "applies only prospectively flies in the face
of the Supreme Court's repeated warning that prospective
application of laws is a doctrine that 'smack[s] of the
legislative process'" (quoting *Harper*, 509 U.S. at 108)
(alteration in original)); *Green v. Humana at Home, Inc.*, No.
16-cv-7586 (AJN), 2017 WL 9916832, at *8 (S.D.N.Y. Sept. 29,
2017) (concluding that finding that a "judicial decision does
not create liability for an individual's actions prior to the
issuance of the court's mandate" would be "irreconcilable with
the very principle of retroactivity").

The United States Court of Appeals for the Ninth Circuit's
("Ninth Circuit") decision in *Ray v. County of Los Angeles*, 935
F.3d 703 (9th Cir. 2019), is instructive. In *Ray*, the Ninth
Circuit addressed whether a Department of Labor ("DOL") rule—
which had been vacated by a court in this District and then
later reinstated by the D.C. Circuit—was effective as of the
original effective date or effective as of the date the mandate
issued. 935 F.3d at 713-14. The lower court in *Ray* had held
that, although the D.C. Circuit decision applied retroactively,
"that decision was merely that the DOL could amend the [statute]
and that those amendments were not arbitrary and capricious.
This . . . differed from 'the retroactive application of the

amended regulations themselves.'" *Id.* at 707. The Ninth Circuit disagreed, explaining that "[w]hen the D.C. Circuit held that the DOL had the rulemaking authority to promulgate the new rule and that its new rule was a reasonable exercise of that authority, . . . it did not change the law but merely explained what the law always was—the district court's erroneous contrary holding notwithstanding." *Id.* at 714. The Ninth Circuit emphasized that, though the lower court had found that it would be unfair to act as if the vacatur of the regulations had never occurred, "it would be equally unfair" to penalize the plaintiffs "just because a single district court issued an erroneous decision that another court reversed on appeal." *Id.* at 715. And although the decision to rely on the vacatur may have been reasonable, "it created a monetary risk" because defendants were "well aware that an appellate court might uphold the regulations on appeal." *Id.* The Ninth Circuit noted that to hold that "an erroneous vacatur can[] postpone a rule's effective date until an appellate court corrects the error sometime in the future" could "encourage dilatory appellate litigation." *Id.*

Plaintiffs, however, point out that not all courts have followed *Harper* in determining the effective date of a reinstated rule. Pls.' Reply, ECF No. 48 at 12-13. For example, Plaintiffs rely on the rationale in *MCI Telecommunications Corp.*

*v. GTE Northwest, Inc.*, 41 F. Supp. 2d 1157 (D. Or. 1999), to argue that courts are not required to "pretend that the binding ruling depriving the regulation of legal force never happened." Pls.' Reply, ECF No. 48 at 14-15. In *MCI*, the district court declined to apply the reinstated regulations from their original effective date because the "court perceive[d] a crucial distinction between applying a new interpretation of a law that admittedly was in effect during the relevant time period, versus applying a substantive regulation that never was in effect to begin with." 41 F. Supp. 2d at 1163 (citation omitted). Plaintiffs argue the same distinction applies here. However, the Court is persuaded that "the distinction observed by the *MCI* court between judicial decisions reversing a rule's vacatur and those reversing course on a prior, contrary interpretation of a rule in fact makes no difference to the applicability of the *Harper* retroactivity rule." *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1040 (S.D. Ohio 2018); *see Jennings*, 304 F.3d at 956-58 (reversing *U.S. W. Commc'ns, Inc. v. Jennings*, 46 F. Supp. 2d 1004, 1009 (D. Ariz. 1999), which had relied on *MCI* for the proposition that the FCC regulations did not take effect until the stay and vacatur orders were reversed); *Morrison*, 199 F.3d at 740-41 (finding that a straightforward analysis under *Harper* "would appear to compel" the court to find that reinstated agency rules applied as of the effective date

16

originally scheduled). When the D.C. Circuit reinstated the Final Rule, this Court's decision became a legal nullity. Thus, the D.C. Circuit's determination that the Final Rule was valid requires the conclusion that it was always valid and that the Final Rule applies as of the initial effective date. *See Brittmon*, 285 F. Supp. 3d at 1040 ("Practically speaking, adoption of the legal fiction that a former judicial decision was never really the law in the first place is precisely what the *Harper* rule requires.").

Plaintiffs further attempt to distinguish the cases applying *Harper* by noting that some of the cases were decided "in the context in which private parties have a statutory right to enforce the agency's regulations through civil litigation." Pls.' Mot., ECF No. 44 at 15 n.2 (citing *Ray*, 935 F.3d at 715)). Plaintiffs argue that "[h]ere, where private parties lack any right of action to enforce CMS's Final Rule," the D.C. Circuit's decision in *Heartland Regional Medical Center v. Sebelius*, 566 F.3d 193 (D.C. Cir. 2009), "is the most relevant authority to guide this Court's decision." *Id.* In *Heartland*, the D.C. Circuit was tasked with determining whether an ambiguous district court order had intended to vacate an agency rule or to remand it to the agency for further consideration. 566 F.3d at 195-96. Because, among other things, "vacatur . . . would have raised substantial doubt about HHS's ability to recoup payments it made

17

for years prior to reinstatement" of the rule, the D.C. Circuit held that the lower court had not vacated the rule. *Id.* at 197-98. Thus, Plaintiffs argue, if this Court retroactively applied the original effective date here, it would "conflict with the *Heartland* court's objective of avoiding disruptive consequences." Pls.' Mot., ECF No. 44 at 16. Critically, though, *Heartland* does not involve an agency rule that has been vacated by a lower court and then later reinstated on appeal. Without this key fact, *Heartland* is inapposite. As in *Bowen*, the primary principles underlying the case concern those of regulatory retroactivity, not judicial decision retroactivity.

Accordingly, the Court finds that the *Harper* retroactivity principles apply to this case.

### B. Equitable Considerations Do Not Warrant Departing From The Retroactivity Principles Set Forth In *Harper*

Even if the *Harper* retroactivity principles apply, Plaintiffs argue that this Court still has the "equitable discretion to limit the agency's retroactive enforcement of the Final Rule." Pls.' Reply, ECF No. 48 at 5 (citing *Arkadelphia Milling Co.*, 295 U.S. at 310; *Atl. Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 310 (1935)). In Plaintiffs' view, the Court retains this discretion, contending the "equitable nature of this inquiry" explains the outcomes in many of the cases concluding that the effective date of a reinstated rule is the

original date. *Id.* at 11. Relying on this rationale, Plaintiffs argue that the "equities are decidedly against Defendants" here. *Id.* at 6. Plaintiffs contend that "Defendants effectively ratified this Court's vacatur and shifted the effective date of the Final Rule themselves" by posting the statement on the Medicaid website providing that "[i]n light of the decision in *Children's Hosp. Ass'n of Texas v. Azar*, No. 17-cv-844 (D.D.C. March 2, 2018) . . . CMS will not be enforcing the 2017 rule . . . as long as the *Children's Hospital Ass'n of Texas* decision remains operative in its current form." Pls.' Mot., ECF No. 44 at 17-18 (citation omitted). Plaintiffs contend that states relied on this statement and the fact that Defendants did not seek a stay of the vacatur, and paid Plaintiffs more than $100 million in DSH interim payments while the Final Rule was vacated. *Id.*; Pls.' Reply, ECF No. 48 at 7-8. Moreover, Plaintiffs argue that the initial effective date is now inappropriate in view of the D.C. Circuit's rejection of Defendants' justification for choosing that date, which omitted a transition period. *See* Pls.' Mot., ECF No. 44 at 16; *Children's Hosp. Ass'n of Tex.*, 933 F.3d at 773 n.3 (explaining that the Final Rule marked a departure from existing policy).

However, under Supreme Court precedent, equitable considerations are largely irrelevant when considering the

retroactivity of judicial decisions. As the D.C. Circuit

explained in *National Fuel Gas Supply Corp.*:

> where *Harper* is applicable, a remedy other than
> retroactive application can be awarded only in four
> specific circumstances: [A] court may find (1) an
> alternative way of curing the constitutional violation,
> (2) a previously existing, independent legal basis
> (having nothing to do with retroactivity) for denying
> relief, or (3) as in the law of qualified immunity, a
> well-established legal rule that trumps the new rule of
> law . . . , or (4) a principle of law . . . that limits
> the principle of retroactivity itself.

59 F.3d at 1288 (quoting *Hyde*, 514 U.S. at 751) (first and third

alteration in original). "[S]imple reliance . . . is

insufficient to warrant a departure from the rule of *Harper*."

*Id.* at 1290 (citing *Hyde*, 514 U.S. at 757-58); *see also Harper*,

509 U.S. at 97 (explaining that to prevent the selective

application of federal law, courts "can scarcely permit 'the

substantive law [to] shift and spring' according to 'the

particular equities of [individual parties'] claims' of actual

reliance on an old rule and of harm from a retroactive

application of the new rule" (alterations in original) (quoting

*Beam*, 501 U.S. at 543)); *Brittmon*, 285 F. Supp. 3d at 1040

("[T]he Supreme Court has expressly rejected the reliance

rationale . . . ."). Because Plaintiffs' alleged harms

ultimately arise from their reliance and certain states'

reliance on the 2008 Rule, the Court will not be swayed by such

arguments. *See York Assocs., Inc. v. Sec'y, Dep't of Housing &*

*Urban Dev.*, 845 F. Supp. 24, 27 (D.D.C. 1994) (concluding that under *Harper*, "equitable considerations," including the cost to the government of $40 million if the court applied a judicial decision retroactively, were "irrelevant"); *see also Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 91 n.7 (2d Cir. 2009) (finding that despite the fact that "the parties relied on [a prior overruled decision] when structuring their transactions, the Supreme Court has held that a reliance interest is insufficient to overcome the presumption of retroactivity set forth in *Harper*"). To the extent Plaintiffs argue that the statement on the Medicaid website misled them as to Defendants' true intentions, this Court also finds that a fair reading of the statement does not indicate that Defendants had precluded themselves from deciding to enforce the Final Rule if the D.C. Circuit reversed this Court's decision. Defendants, after all, only stated that they would not enforce the Final Rule as long as this Court's decision "remain[ed] operative in its current form" and that they had appealed. Ex. A to Keneally Decl., ECF No. 44-3 at 5. Moreover, the retroactive application of the D.C. Circuit's decision does not fall into any of the four circumstances described above. Thus, per *Harper*, Plaintiffs' circumstances do not warrant relief from retroactivity.

Even were the Court not limited by *Harper* and its progeny, the Court is not persuaded that "the equities are decidedly against Defendants." Pls.' Reply, ECF No. 48 at 6. In reversing this Court's decision, the D.C. Circuit held that the Final Rule is "consistent with the statute's context and purpose, both of which suggest DSH payments are meant to assist those hospitals that need them most by covering only those costs for which DSH hospitals are in fact uncompensated." *Children's Hosp. Ass'n of Tex.*, 933 F.3d at 772. In declining to apply the effective date as of the original date, the Court would therefore be in danger of thwarting the Act's purpose and operation by keeping other qualifying hospitals from receiving the full DSH payments to which the D.C. Circuit found they are entitled. *See* Pls.' Combined Mem. Law Supp. Appl. Prelim. Inj. Summ. J., ECF No. 12 at 49-50 (stating that application of the Final Rule will cause funds to be recouped from Plaintiffs and redistributed to other qualifying hospitals); *see also Children's Hosp. Ass'n of Tex.*, 933 F.3d at 772 ("By requiring the inclusion of payments by Medicare and private insurers, the 2017 Rule ensures that DSH payments will go to hospitals that have been compensated least and are thus most in need."); *Richert v. LaBelle HomeHealth Care Service LLC*, No. 16-cv-437, 2017 WL 4349084, at *3 (S.D. Ohio Sept. 29, 2017) (finding the purpose of the statute "would be thwarted if the legal error of the district court . . . caused

employees protected by the [statute] to be unable to recover for over ten months of overtime wages").

Despite the statement on the Medicaid website that Defendants would not enforce the Final Rule while the Court's vacatur remained operative, Plaintiffs were aware that Defendants had appealed the Court's decision and that the D.C. Circuit had the authority to reverse the decision. *See* Ex. A to Kenneally Decl., ECF No. 44-3 at 5. In this situation, other courts have likewise reasoned that "a party who relies upon the wrong interpretation of the law should not be rewarded over a party who relies upon the correct interpretation." *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 749196, at *4 (S.D. Ohio Feb. 27, 2017); *see also Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, 215 F. Supp. 3d 805, 810 (S.D. Iowa 2016) ("[I]t strikes the Court as far more 'unfair' to allow Defendant to escape liability for nearly a year's worth of overtime wages based on a district court decision that was ultimately deemed to be error."). This is so even when it is a third-party that relied on the old rule, as Plaintiffs allege that certain states did here. *See Ray*, 935 F.3d at 715 ("The State gambled that *Weil I* would be affirmed. The effect of that gamble might be unfair to the County, but the County must seek any recourse from the State. It is not fair for the homecare

providers to bear the financial consequences of the State's calculated risk.").

Finally, although Plaintiffs correctly note that the D.C. Circuit rejected Defendants' justification underlying the reason for the June 2, 2017 effective date, Plaintiffs do not argue that the effective date itself caused harm or otherwise was in violation of the Administrative Procedure Act. Without more, the Court therefore does not find that the effective date is inappropriate.

## IV. Conclusion

For the reasons stated above, Plaintiffs' Motion to Clarify the Effective Date of the Final Rule, ECF No. 44, is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:   Emmet G. Sullivan**
**United States District Judge**
**November 30, 2020**